IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

FLORA ELIZABETH DODGE,

Plaintiff,

v.

JCJL ENTERPRISES, INC., dba WITHAM
TRUCK STOP RESTAURANT,

Defendant.

Civ. No. 1:15-cv-00924-CL

**OPINION AND
ORDER**

CLARKE, Magistrate Judge.

Defendant JCJL Enterprises, Inc. ("JCJL") moves for summary judgment on plaintiff Betty Dodge's Family Medical Leave Act ("FMLA") and Age Discrimination in Employment Act ("ADEA") claims. Dckt. # 17. For the reasons below, JCJL's motion for summary judgment as to these claims is DENIED.

**FACTS**

JCJCL owns Witham's Truck Stop Restaurant ("Witham's"). Ms. Dodge has worked as a restaurant server at Witham's since 1973. In August 2013, she broke her ankle outside the

Page 1 – **OPINION & ORDER**

workplace. This required surgery, and Ms. Dodge took agreed-upon medical leave. She was scheduled to return to work on November 5, 2013. At that time, JCJL informed Ms. Dodge that no positions were available, and asked that she provide a second return-to-work release from her primary care physician.

Joe and Christine Stella ("the Stellas") own seventy percent of JCJL. The Stellas have a majority interest in other local businesses, which include a catering business, convenience store, and two sports bars.

## ANALYSIS

JCJL moves for summary judgment on Ms. Dodge's FMLA and ADEA claims, as well as an associated state law leave claim. This matter is limited to a determination of whether defendant employs a sufficient number of people to establish coverage under these Acts. Neither party raises additional issues, and no cross motions were filed.

### I.  Summary Judgment Standards

A party is entitled to summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Bahn v. NME Hospitals, Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

The moving party carries the initial burden of proof. It meets this burden by identifying portions of the record which demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the initial burden is satisfied, the

burden shifts to the nonmoving party to demonstrate through the production of probative evidence that an issue of fact remains to be tried. *Id.*

The court views the evidence in the light most favorable to the non-moving party. *See Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubts as to the existence of a genuine issue of fact should be resolved against the moving party, *Hector v. Wiens*, 533 F.3d 426, 432 (9th Cir. 1976), and inferences drawn from the underlying facts are viewed in the light most favorable to the party opposing the motion. *Valadinham v. Bojorquez*, 866 F.2d 1135, 1137 (9th Cir. 1989). Summary judgment is inappropriate where different inferences may be drawn. *Sankovich v. Ins. Co. of N. America*, 638 F.2d 136, 140 (9th Cir. 1981).

But, deference to the non-moving party has limit. It must "set forth specific facts showing that there is genuine issue for trial." Fed. R. Civ. P. 56(e). Self-serving affidavits are "cognizable" to establish genuine issue of material fact so long as they are based upon personal knowledge and not too conclusory. *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001)(citing *U.S. v. Shumway*, 199 F.3d 1093, 1103-04 (9th Cir. 1999)). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of material fact and defeat summary judgment." *Soremekun v. Thrifty Payless Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Finally, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.     Family Medical Leave Act

### A. FMLA Standards

The FMLA addresses workplace leave. The issue at summary judgment is limited to JCJL's contention that is not an "employer" under the Act.

The FMLA defines "employer" as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i). The Department of Labor promulgates regulations instructing: "Any employee whose name appears on the employer's payroll will be considered employed each working day of the calendar week, and must be counted whether or not any compensation is received for the week." 29 C.F.R. § 825.105. Further regulations direct analysis of an employer with multiple entities. 29 C.F.R. § 825.104(c) (2)(i-iv). An employer's intent is irrelevant to determination of FMLA liability. *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011).

### B. Analysis

In order to obtain requested summary judgment, JCJL must show that it was not a "covered" employer under the FMLA. Witham's refused to reinstate Ms. Dodge upon her scheduled return-to-work date, November 5, 2013. For summary judgment purposes, JCJL must therefore show that it had fewer than 50 employees for 20 or more weeks in 2012 or 2013. The Court is mindful that, at summary judgment, inferences drawn must be viewed in the light most favorable to the nonmoving party. *Valadinham*, 866 F.2d at 1137.

JCJL's argument points to (1) simple summation of JCJL employees per day; and (2) the aggregate "integrated employer test" promulgated under the Act.

## II.     Family Medical Leave Act

### A. FMLA Standards

The FMLA addresses workplace leave. The issue at summary judgment is limited to JCJL's contention that is not an "employer" under the Act.

The FMLA defines "employer" as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i). The Department of Labor promulgates regulations instructing: "Any employee whose name appears on the employer's payroll will be considered employed each working day of the calendar week, and must be counted whether or not any compensation is received for the week." 29 C.F.R. § 825.105. Further regulations direct analysis of an employer with multiple entities. 29 C.F.R. § 825.104(c) (2)(i-iv). An employer's intent is irrelevant to determination of FMLA liability. *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011).

### B. Analysis

In order to obtain requested summary judgment, JCJL must show that it was not a "covered" employer under the FMLA. Witham's refused to reinstate Ms. Dodge upon her scheduled return-to-work date, November 5, 2013. For summary judgment purposes, JCJL must therefore show that it had fewer than 50 employees for 20 or more weeks in 2012 or 2013. The Court is mindful that, at summary judgment, inferences drawn must be viewed in the light most favorable to the nonmoving party. *Valadinham*, 866 F.2d at 1137.

JCJL's argument points to (1) simple summation of JCJL employees per day; and (2) the aggregate "integrated employer test" promulgated under the Act.

1. **Daily Summation Argument**

JCJL inferred in its briefing, and plainly stated at oral argument, that FMLA coverage arises only when an employer has 50 or more persons performing work on any given day. Def.'s Br., p.1 (Dckt. #18). This theory is distinct from a tabulation that accounts for all persons on a payroll.

Department of Labor regulation directly addresses "counting employees for determining coverage" under the Act. Regarding payroll headcounts, it states:

> Any employee whose name appears on the employer's payroll will be considered employed each working day of the calendar week, and must be counted whether or not any compensation is received for the week."

29 C.F.R. § 825.105. And, "employees on paid or unpaid leave . . . must be counted whether or not any compensation is received for the week." 29 C.F.R. § 825.105(c). The Court therefore looks to weekly payroll records.

However, the summary judgment record is limited and contains no weekly payroll records. An August 2012 "Payroll Summary" document shows that Witham's Truck Stop Restaurant lists thirty-six individuals employed in August 2012. Pl.'s Ex. 1 (Dckt. #25-2). Plaintiffs also submit a spreadsheet summarizing monthly employee payroll records between January 2012 and December 2013 at all four of the Stellas' businesses during that period. Pl.'s Ex. 3 (Dckt. #25-2). These total numbers varied from 50 to 85. *Id.*, p. 1.

The matter therefore turns on whether the four Stella enterprises are counted in aggregate.

2. **Integrated Employer Test**

JCJL preemptively argues that the regulations allowing aggregate count of employees in related businesses do not apply. Def.'s Op. Br., p. 8 (Dckt. #18). Joe and Christine Stella owned

majority portions of four companies throughout 2012 and 2013. These companies are (1) JCJL, which operates Witham's; (2) JZJL, which operates a sports bar in Medford; (3) JOMCO, which operates a sports bar in Grant's Pass; and (4) Bizz, Inc., which operates a convenience store. Witham's additionally began operating a catering business between 2002 and 2004. J. Stella Dep., p. 18.

> The regulations emphasize:
>
>> The courts have said that here is no definition that solves all problems as to the limitations of the employer-employee relationship under the Act, and that determination of the relation cannot be based on isolated factors or upon a single characteristic or technical concepts, but depends "upon the circumstances of the whole activity" including the underlying "economic reality." *Id.*

29 C.F.R. § 825.105(a).

Consequently, the regulations instruct consideration of four factors in determining whether separate corporate entities are a single "covered employer" under the Act. These are: (1) "common management"; (2) "interrelation between operations"; (3) "centralized control of labor relations"; and (4) "degree of common ownership/financial control." 29 C.F.R. § 825.104(c)(2)(i-iv). At least one court directing addressing FMLA employer coverage has stated that the four factors merit equal weight "given the plain language" of the regulation. *Engelhardt v. S.P. Richards Co. Inc.*, 472 F.3d 1, 5 (1st Cir. 2006). JCJL, however, correctly notes that courts addressing the Department of Labor's integrated employment analysis in *other statutory contexts* do not assign determinative weight to any of the four factors. Def.'s Br., p. 9 (citing *Swallows v. Barnes & Noble Bookstores, Inc.*, 128 F.3d 990, 994 (6th Cir. 1997)) (applying test to an ADEA claim and stating that "none of these factors is conclusive, and all four need not be met in every case") (emphasis added).

Page 6 – OPINION & ORDER

The *Englhardt* court also observes that the Act's 50-employee exception "is an economic one rooted in protecting small businesses and the purpose of the 'integrated employer test' is to ensure that a defendant has not structured itself to avoid labor laws." *Engelhardt v. S.P. Richards Co., Inc.*, 472 F.3d 1, 5 (1st Cir. 2006) (citing *Papa v. Katy Indust.*, 166 F.3d 937, 942 (7th Cir. 1999)).

Notably, the regulations do not require that the corporate entities operate the same type of business. Any inferential submission by JCJL that Witham's is distinct because it is the only "restaurant" business currently owned[1] by the Stellas (Def.'s Br., p. 11) is therefore inapposite.

Analysis does not require that the entities share a location; they need only be within a 75 mile radius. 29 C.F.R. § 825.111(b). No party asserts this threshold is not met.

The Court addresses the four factors.

### (i)   Common Management

Deposition papers show that since "at least 2003-2004" the Stellas have employed a single general manager to continuously oversee all five businesses. Pl.'s Resp. p. 8 (Dckt. #25); Ledford Dep., p. 17 (Dckt. #25-1); Joe Stella Dep., p. 22-24 (Dckt. #25-1). Mr. Stella states that the businesses presently have separate management, but he and his wife "have oversight management." Joe Stella Decl., p. 3 ¶8 (Dckt. #19). The Stellas employed a series of "general managers" who were "working all over the place" across their businesses in 2003 or "2004ish." Ledford Dep., p. 17. Since then, the Stellas have employed a single general manager, who oversees operations at all entities. *Id.* at 17-18; J. Stella Dep., p. 64-65.

---

[1] The summary judgment record shows that the Stella's owned additional restaurants at various times. J. Stella Dep., p. 71-73.

Page 7 – **OPINION & ORDER**

The 2013 General Manager was "probably Jarred Spencer." *Id.* at 22. Mr. Spencer oversaw operations at four of the Stella businesses. Though Mr. Stella states that he oversaw the catering business, *id.*, the catering business at that time operated within Witham's restaurant. *Id.* at 18-19; *id.* at 68. Mr. Spencer's role was to "oversee the managers" and he had "the ability to direct and control employees" at the four businesses. *Id.* at 23.

The record shows that monthly manager meetings are held at the Stella's home. Pl.'s Resp., p. 9, Ledford Dep., p. 8-9.

The record also shows that the businesses appeared to rely upon Stella family members for management. Mr. Stella stated that his daughter is presently training to become general manager of all operations. J. Stella Dep., p. 7. This daughter's husband manages the convenience store. Mr. Stella's stepdaughter, Rachel, works at the convenience store; the stepdaughter's husband, Leon Stephens, has been the kitchen manager at the Medford sports bar for approximately seven or eight years. *Id.* Ms. Stella's daughter, Leah, is the main bookkeeper for all five businesses. *Id.*

(ii)    **Interrelation Between Organizations**

The record shows that the Stella businesses utilized a central payroll, shared employees, regularly made intra-business loans, shared insurance policies, and occasionally shared inventory.

Payroll was individually entered at each business site, but centrally compiled. J. Stella Dep., p. 20; Mosttler Dep, p. 14 (Dckt. #25-2). Family members shared management duties, as described above. During busy periods, both family and non-family employees were asked to perform shifts at other businesses stations. Ledford Dep., p. 19-22. The businesses previously

Page 8 – OPINION & ORDER

shared a "floor guy," who was a former manager (*id.* at 21) and a maintenance worker, who worked at all the businesses. *Id.*; J. Stella Dep., 27-28.

The record reflects intracompany loans. The Stella businesses loaned funds from one enterprise to another on an *ad hoc* basis as needed, without advance notice, and without interest or other penalties. *Id.* at 44-47, 50. Ms. Stella stated that these loans were "on the books." C. Stella Dep., p. 17-18. In response to questioning as to whether the loans were "written down," Ms. Stella stated that "it's all paid back." *Id.* at 18.

The five businesses also utilize shared insurance policies. J. Stella Dep., p. 39, 40. The record contains copies of the policies, which confirms that they are linked. The policies contain a "combined premium discount," and each carries an additional annotation stating "You are rated with one or more policies due to common ownership." Pl.'s Ex. 1, p. 1-5 (Dckt. #25-1). The policy incorporates an "entity verification" of share ownership. *Id.* at 6.

Finally, depositions before the Court state that businesses shared food and other stock items, and were "intertwined." Ledford Dep., p. 19, 21. Supplies are now generally shipped to individual sites, but Mr. Stella stated that they "might have the billing address as the [central] office. I'm not sure." J. Stella Dep., p. 21. But, earlier in the enterprise history, some supplies were shipped to Witham's and distributed to other sites. Ledford Dep., p. 19.

### (iii) Centralized Control of Labor Relations

The documents before the Court indicate that Joe and Chris Stella controlled central labor policies and procedures for all five businesses. Mr. Stella hired an attorney to draft an employee handbook that is identical for all five. Dep. Joe Stella p. 49. Employee termination decisions

were reserved for Mrs. Stella, and both Stellas had the "final say" in termination matters. Ledford Dep., p. 65; J. Stella Dep., p. 51.

### (iv) Common Ownership and Control

Finally, as expected, assessing "ownership and control" of the four Stella businesses during the relevant period (2012-2013) is difficult. Materials produced to the Court indicate interrelatedness; internal transfer between family members and composition of distinct corporate entities are difficult to follow.

An insurance document, dated November 30, 2015, sets out ownership with some clarity as of that date. Joe and Christine Stella respectively own 35% each, or 70% total, of JCJL. They own 38% each, or 76% total, of JZLS and JOMCO, which operate the sports bars. And they own 32% each, or 64% total of Bizz, Inc., which operates the convenience store. Pl.'s Ex. 4, p. 5 (Dckt. #25-1). The Stella's own 100% of JOEST. *Id.* Since 2014 JOEST has operated the catering businesses initially operated by JCJL. J. Stella Dep. p. 37.

The entities also share minority shareholders. JCJL lists John Sawyer as a 30% minority shareholder; Mr. Sawyer also owns the remaining 24% of JZLS. JOMCO minority shares are held by Ms. Stella's mother, Norma Jean Brown (12%), Mr. Swanson's wife, Terry Swanson (6%), and Chris Welcome (6%). Bizz Inc. minority shares are held by Norma Jean Brown (12%), Mr. Stella's brother John Stella (12%), and Terry Swanson (12%). JOEST, Inc., the catering company established in 2014, is owned entirely by the Stellas. *Id.*

Regarding corporate control, Joe Stella is listed as the president of JCJL, JOMCO, JCJL, Bizz, Inc., and JOEST. *Id.* Christine Stella is listed as the secretary of the same entities. Under

"duties" the document indicates that the couple performs "daily operations" for each corporation, and that the respective remaining minority shareholders perform "none." *Id.*

The couple comprises the vote at annual shareholder meetings for all companies. J. Stella Dep., p. 44. Ms. Stella affirmed that she and her husband are "the two active owners of the business, but the businesses have other investors." C. Stella Dep., p. 16 (Dckt. #25-1). These additional investors "sometimes" play an active role in shareholders [sic] voting." *Id.* But, Ms. Stella stated it is "typical" that a quorum vote is made up of herself and her husband alone. *Id.* at 15-17. When asked "[W]hat you and Joe say, that's what happens with the businesses?" Ms. Stella replied "yes." *Id.* at 17.

In summary, the record specifically shows that the Stellas owned seventy percent of JCJL, seventy-six percent of JZJL, seventy-six percent of JOMCO, and sixty-four percent of Bizz, Inc. The Stella's were operating JZJL at the time of Ms. Dodge's dismissal, and this operation then included the business that later became Star Catering. J. Stella Dep., p. 37. Further distinction between these two entities is presently irrelevant. Papers before the Court indicate that the Stella's maintained control of operations across the companies in 2012 and 2013.

### C. Conclusion

Ms. Dodge, as plaintiff, ultimately bears the burden of establishing that JCJL is a covered employer under the Act. At summary judgment, however, the court must "view the evidence and inferences therefrom in the light most favorable to the party opposing the motion." *Valadinham*, 866 F.2d at 1137 (citations omitted). In light of this standard and the evidence above, the Court consequently cannot find that the Stellas' four entities – JCJL, JCOMCO, JZLS, and Bizz, Inc. –

did not share interrelated operations in 2012 and 2013. The limited record, while not entirely clear, does not now establish that JCJL is exempt from FMLA liability based upon its employee headcount. Instead, it points to a finding that the Stella's enterprises, in aggregate, employed more than 50 people during the period under review. JCJL's motion for summary judgment on the matter is denied.

### III. Age Discrimination in Employment Act

#### A. ADEA Standards

The ADEA prohibits workplace discrimination based upon age. The issue here again limited to determination of whether JCJL is an "employer" under the Act.

An employer under the ADEA need only maintain 20 employees on its payroll at the time of termination. 29 U.S.C. § 630(b). The Act specifies that this means "twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." *Id.* Unlike FMLA claims, ADEA claims proceed under civil rights litigation standards. However, courts have consistently relied upon the Department of Labor's integrated employment test, described above, to determination employer status under the ADEA. *Herman v. United Brotherhood of Carpenters and Joiners of Am., Loc. Union No. 971, et al.*, 60 F.3d 1375 1383-84) (9th Cir. 1995) (finding that integrated employer test applies to ADEA claims against employers, though it does not apply to claims against unions); *see also Papa*, 166 F.3d at 939-40; (citations omitted); *Swallow*, 128 F.3d at 994 (citations omitted); W*ynn v. Nat'l Broadcasting Co., Inc.*, 234 F.Supp. 2d 1067, 1094-95 (C.D. Cal. 2002).

///

///

### B. Analysis

Limited payroll records now submitted show that JCJL alone employed thirty six persons in August 2012. Pl.'s, Ex. 1 (Dckt. #25-2). Analysis of the remaining record shows that, for the purposes of these summary judgment proceedings only, the Stella enterprises are plausibly integrated. The aggregate businesses employed between 50 and 85 people in 2012 and 2013. Pl.'s Ex. 3 (Dckt. #25-2). Further analysis is unnecessary at this stage of the proceedings. JCJL's motion for summary judgment pertaining to its ADEA and related-state law claim coverage is therefore denied.

### CONCLUSION

In summary, the Court finds that the summary judgment record – while not a model of clarity – supports a finding that the Stella businesses are properly considered in aggregate under 29 C.F.R. § 825.104(c)(2)(i-iv). This directs a finding that, for the purposes of this case, they employed more than fifty people during the relevant period and, therefore, are a covered employer under both the FMLA and the ADEA.

### ORDER

For the reasons above, defendant JCJL's motion for summary judgment (Dckt. #17) is DENIED.

DATED this ___ day of August, 2016.

MARK D. CLARKE
United States Magistrate Judge